UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MATTHEW ARACICH,                                        :
                       Plaintiff,                 :
                                       :

v.                                                      :

                                       :

THE BOARD OF TRUSTEES OF THE                            :
EMPLOYEE BENEFIT FUNDS OF HEAT &                        :
FROST INSULATORS LOCAL 12; THE                          :
EMPLOYEE BENEFIT FUNDS OF HEAT                          :
AND FROST INSULATORS LOCAL 12; THE                      :
BOARD OF TRUSTEES OF THE PENSION                        :
FUND OF HEAT AND FROST INSULATORS                       :
LOCAL 12 PLAN; THE PENSION FUND OF                      :     **OPINION AND ORDER**
THE HEAT AND FROST INSULATORS                           :
LOCAL 12 PLAN; THE BOARD OF                             :     21 CV 9622 (VB)
TRUSTEES OF THE HEAT AND FROST                          :
INSULATORS LOCAL 12 WELFARE FUND;                       :
THE HEAT AND FROST INSULATORS                           :
LOCAL 12 WELFARE FUND; AL WASSELL,                      :
in his capacity as Fund Manager of The                  :
Employee Benefit Funds of Heat & Frost                  :
Insulators Local 12; and JOHN DOES 1–10,                :
whose identities are currently unknown,                 :
constituting the trustees, plan administrators or       :
fiduciaries of the Employee Benefit Funds of            :
Heat & Frost Insulators Local 12 and the Pension        :
Fund of Heat and Frost Insulators Local 12,             :
                      Defendants.              :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Matthew Aracich, the former business manager of the Heat & Frost Insulators

Local 12 Union (the "Union"), brings this action against the Employee Benefit Funds and the

Welfare Fund of the Union ("the Welfare Plan"); the Pension Fund of the Union (the "Pension

Plan," and, together with the Welfare Plan, the "Plans"); the Board of Trustees of each of the

Plans (the "Trustees"); Al Wassell, in his capacity as manager of the Plans; and ten, unidentified

defendants constituting the trustees, plan administrators or fiduciaries of the Plans, alleging

1

defendants improperly determined plaintiff was not "retired" under the Plans' governing

documents and denied his request for pension and retiree health benefits, in violation of the

Employee Retirement Income Security Act of 1974 ("ERISA") and state law.

Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6).

(Doc. #25).

For the reasons set forth below, the motion is GRANTED.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion, the Court accepts as true all well-pleaded

allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as

summarized below.

I.      Plan Terms Regarding Retirement

The Pension Plan provides pension benefits to qualifying participants who retire.  The

Welfare Plan provides health, medical, and welfare benefits to participants during their

employment with the Union and retiree health benefits when qualifying participants retire.

Section 6.8 of the Pension Plan's governing document provides "[t]o be considered

retired, a Participant must have separated from Covered Employment."  (Doc. #27-3 ("Pension

Plan Document") § 6.8(a); Compl. ¶ 25).

"Covered Employment" means "employment of an Employee by an Employer" and

includes "full-time service as an officer or employee of . . . a state or local central labor council

provided that contributions are made to the Fund with respect to such service."  (Pension Plan

Document § 1.10; Compl. ¶ 19).

An "Employee" means "any person employed by an Employer" and "include[s] employees of . . . a state or local central labor council provided the contributions for such employees are made in accordance with the Fund." (Pension Plan Document § 1.11(a); Compl. ¶ 20).

An "Employer" or "Contributing Employer" means "any employer obligated by its collective bargaining agreement . . . to contribute to the fund" and includes "a state or local central labor council if contributions for its employees are made." (Pension Plan Document § 1.8; Compl. ¶ 21).

The Welfare Plan defines "retire" the same way "as that term is defined in the [Pension Plan Document]." (Doc. #27-1 ("Welfare Plan SPD") at 4).

II.     Denial of Plaintiff's Retirement Benefits

For some unspecified period of time, plaintiff was the Union's business manager. While he was an employee of the Union, plaintiff participated in the Plans.

At some point, plaintiff left the Union and became president of the Building and Construction Trades Council of Nassau and Suffolk Counties (the "Council").

The Council was not a Union employer and did not contribute to the Plans. However, after plaintiff began employment with the Council, the Council entered into an agreement with the Trustees of the Plans that the Council would contribute to the Plans on plaintiff's behalf (the "Participation Agreement"). Thus, under the Participation Agreement, plaintiff was permitted to continue participating in the Plans and accruing benefits thereunder while he worked for the Council.

On January 27, 2021, the Council terminated the Participation Agreement effective January 1, 2021, and engaged another benefits provider for plaintiff.

On February 11, 2021, defendant Wassell, the manager of the Plans, sent plaintiff a letter confirming the Plans accepted the Council's termination of the Participation Agreement.

On February 26, 2021, plaintiff sent Wassell a letter announcing he would be "retiring from [the Union]" effective at four o'clock that afternoon.  (Doc. #1 ("Compl.") ¶ 12). Plaintiff's letter stated he expected "my retirement also includes maintaining health coverage with the health care provided by the funds."  (Id.).  Plaintiff remained employed as president of the Council after submitting the February 26 letter.  At that time, plaintiff was sixty years old and had over thirty years of service credit under the Plans' governing documents.

By letter dated March 12, 2021, Wassell informed plaintiff that the Plans denied his request "because you have never ceased working for the [Council]" and therefore he was "not eligible under the terms of the Plan to commence receiving a pension benefit at this time." (Compl. ¶ 14).  The March 12 letter referred to the Pension Plan's Summary Plan Description ("Pension Plan SPD"), which states a participant "must stop working" before pension benefits could begin.  (Id.)  Thus, because plaintiff had remained "continuously employed" by the Council, plaintiff was not eligible to receive retirement benefits.  (Id.)

Plaintiff appealed the denial of his retirement benefits on May 3, 2021.  The Trustees denied his appeal on May 21, 2021.  The Trustees explained that although plaintiff was "no longer working in Covered Employment as defined by the Plan document," plaintiff had "not experienced a separation from employment," and therefore had "not 'retired' as required under the terms of the Plan and applicable law."  (Doc. #27-8 ("Appeal Denial") at ECF 3).[1]

---

[1]      "ECF ___" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

The Appeal Denial further explained that the requirement that a participant "stop working" before receiving pension benefits was "intended to comply with U.S. Department of Treasury Regulation[s]," referring to Internal Revenue Service guidance that "a qualified pension plan is generally not permitted to pay benefits before retirement" meaning "when [a participant] stops performing service for the employer." (Appeal Denial at ECF 3). Therefore, the Trustees contended that "allowing a participant who has not legitimately retired to commence receiving a benefit could violate section 401(a) of the Internal Revenue Code and result in disqualification of the [Pension] Plan." (Id.)

## DISCUSSION

I.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir.

2010).  The Court may also consider any documents "integral to the complaint" when their

import and authenticity are not disputed.  Id.  A document is considered "integral to the

complaint" when "the complaint relies heavily upon its terms and effect."  Id.[3]

## II.     ERISA Section 502(a)(1)(B) Claim (Count One)

Defendants argue plaintiff fails plausibly to plead that the Trustees' denial of plaintiff's

benefits was arbitrary and capricious.

The Court agrees.

### A.     Legal Standard

"Section 502 of ERISA authorizes participants in an employee benefit plan to bring a

civil action (i) to recover benefits due to them under the terms of their plan, and (ii) to obtain

---

[3]     Here, the complaint relies heavily on the Pension Plan Document (Doc. #27-3), the
Pension Plan SPD (Doc. #27-2), the Welfare Plan SPD (Doc. #27-1), the February 26, 2021,
letter from plaintiff to Wassell (Doc. #27-5), the March 12, 2021, letter from Wassell to plaintiff
(Doc. #27-6), and the Appeal Denial (Doc. #27-8).  (See, e.g., Compl. ¶¶ 16, 18, 30, 31, 32, 34,
35, 36, 37, 38, 40).   Accordingly, the Court has considered these documents in addition to the
allegations set forth in the complaint itself.  See Sunwoo v. JPMorgan Chase & Co., 2021 WL
2443814, at *6 (S.D.N.Y. 2021) (collecting cases considering, on a motion to dismiss, the
ERISA plan document, claim denial letters, appeal denial letters, and correspondence between
plaintiff's counsel and the plan fiduciaries).

other appropriate equitable relief to redress violations or enforce any provisions of ERISA or the terms of the plan." Soto v. Disney Severance Pay Plan, 26 F.4th 114, 117 (2d Cir. 2022).

The Court reviews a plan administrator's decision to deny benefits de novo unless the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).

When "the relevant plan vests its administrator with discretionary authority over benefits decisions . . . the administrator's decisions may be overturned only if they are arbitrary and capricious." Roganti v. Metro. Life Ins. Co., 786 F.3d 201, 210 (2d Cir. 2015).  Such discretionary authority includes decisions made in "interpret[ing] ambiguous plan terms." Soto v. Disney Severance Pay Plan, 26 F.4th at 121.  "But when an administrator is interpreting unambiguous plan terms, we generally apply a de novo standard of review because unambiguous language leaves no room for the exercise of discretion." Id.  "Whether plan language is ambiguous is a question of law for the court, turning on whether the language is reasonably capable of more than one meaning within the context of the entire plan." Id.

Here, Section 6.3 of the Pension Plan Document provides:

The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of the Plan, and decisions of the Trustees shall be final and binding on all parties.

(Pension Plan Document § 6.3).

Section 6.4 of the Pension Plan Document further provides:

Any dispute as to eligibility, type, amount or duration of benefits or any right or claim to payments from the Plan shall be resolved by the Board of Trustees under and pursuant to the provisions of the Plan, and its decision of the dispute, right or claim shall be final and finding on all parties.

(Pension Plan Document § 6.4(a)).

The Pension Plan SPD similarly provides that the Board of Trustees "reserves the right, in its sole and absolute discretion, to . . . interpret and decide all matters under the Plan, or any benefits provided under the Plan." (Pension Plan SPD at 36).

The Welfare Plan SPD provides:

> In carrying out their . . . responsibilities under the Plan, the Board of Trustees . . . will have discretionary authority to interpret the terms of the Plan and to determine eligibility and entitlement to Plan Benefits in accordance with the terms of the Plan. Any interpretation or determination will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary or capricious.

(Welfare Plan SPD at 73).

Because each Plan provides the Trustees discretionary authority over benefits decisions, the arbitrary and capricious standard of review applies to the Trustees' interpretation of ambiguous Plan terms. See, e.g., Brown v. Bd. of Trs. of Bldg. Serv. 32B-J Pension Fund, 392 F. Supp. 2d 434, 443–44 (E.D.N.Y. 2005) (collecting cases applying the arbitrary and capricious standard based on language similar to Section 6.3 of the Pension Plan Document).

Under this "highly deferential" standard, to state a claim under Section 502(a)(1)(B), a plaintiff must allege that the trustees' interpretation was "without reason, unsupported by substantial evidence or erroneous as a matter of law." Soto v. Disney Severance Pay Plan, 26 F.4th at 123. "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." Zeuner v. SunTrust Bank Inc., 181 F. Supp. 3d 214, 219 (S.D.N.Y. 2016) (quoting McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132 (2d Cir. 2008)).

B.      Application

Here, the definition of "retire" in the Plans' governing documents is ambiguous, and the

Trustees' interpretation that plaintiff did not "retire" on February 26, 2021, was not arbitrary or

capricious.[4]

1.      "Retire" is Ambiguous

"To be considered retired, a Participant must have separated from Covered

Employment."  (Pension Plan Document § 6.8(a); Compl. ¶ 25).

"Separate" is not defined in the Plans, and neither Section 6.8 nor the remaining

provisions of the Pension Plan Document explain whether an actual cessation of a participant's

current employment is required to "separate from Covered Employment."[5]  Thus, the term

"retire" is reasonably capable of more than one meaning, and, "[f]or the Complaint to state a

claim upon which relief may be granted, it must plead that the Plan Administrator's

interpretation of ["retire"] and consequent denial of . . . benefits to [plaintiff] were arbitrary and

capricious."  Soto v. Disney Severance Pay Plan, 26 F.4th at 123.

---

[4]      For clarity purposes, the Court will only cite to the Pension Plan Document in this analysis because, as discussed above, the Welfare Plan defines "retired" as having the definition in the Pension Plan.

[5]      The Pension Plan Document provides that the "rules as to what constitutes retirement (and separation from Covered Employment for purposes of retirement) differ for periods before attainment of Normal Retirement Age and after attainment of Normal Retirement Age, as described in Sections 6.9(a) and (b)."  (Pension Plan Document § 6.8(a)).  However, Sections 6.9(a) and (b) deal solely with suspensions of pension benefits after they had already commenced.  (Pension Plan Document §§ 6.9(a)–(b)).  Similarly, Section 6.8(b), which provides an exception to "retirement," only deals with circumstances when a participant has already "separated from his previous Covered Employment."  (Pension Plan Document § 6.8(b)).  Although Section 6.7(a) refers to a "postpone[ment] [of benefits] due to the Participant's continued employment," it does not explain whether a participant can "retire" notwithstanding continued employment.  (Pension Plan Document § 6.7(a)).

2.      Trustees' Interpretation of "Retire"

Here, the Trustees based their determination that plaintiff did not "retire" on (i) the terms

of the Plans' governing documents, which require a participant to "separate" from employment

to retire (Pension Plan Document ¶ 6.8(a)); (ii) the Pension Plan SPD, which provides "[y]ou

must stop working" for benefits to commence (Pension Plan SPD at 23); and (iii) the concern

that providing benefits before plaintiff actually separated from employment would jeopardize the

Pension Plan's tax-exempt status.

Although summary plan descriptions "do not necessarily constitute the terms of the

plan," ERISA "contemplates that the summary plan description will be an employee's primary

source of information regarding employment benefits, and employees are entitled to rely on the

descriptions contained in the summary." Halberg v. United Behav. Health, 408 F. Supp. 3d 118,

133 (E.D.N.Y. 2019).  It was therefore reasonable for the Trustees to interpret ambiguous Plan

terms in a manner consistent with the Pension Plan SPD.

In addition, it was reasonable, and consistent with the Trustees' obligations to Plan

participants, to interpret the Plans in a manner that will maintain the pension fund's tax-qualified

status.  In fact, Section 8.7 of the Pension Plan Document requires that the Pension Plan "be

interpreted and applied consistent with" the requirements for tax qualification.  For these

reasons, "[s]everal federal district courts have upheld trustee interpretations of pension plans

based on similar concerns about violating" the requirements for tax qualification.  Metzgar v.

U.A. Plumbers and Steamfitters Local No. 22 Pension Fund, 2022 WL 610340, at *2 (2d Cir.

Mar. 2, 2022) (summary order) (trustees' interpretation that participants had to "separate

completely from their prior employment" in order to "retire" not arbitrary and capricious).

10

Thus, the pleadings reflect reasoned bases for the Trustees' decision, and the Court

cannot find the decision was arbitrary or capricious.

Accordingly, plaintiff's claim under ERISA Section 502(a)(1)(B) must be dismissed.[6]

III.     ERISA Section 510 Claim (Count Two)

Defendants argue plaintiff fails plausibly to state a claim under Section 510 of ERISA

because plaintiff does not plead an "adverse employment action."

The Court agrees, and also concludes plaintiff fails to plead the requisite intent under

Section 510 of ERISA.

Section 510 makes it

> unlawful for any person to discharge, fine, suspend, expel, discipline, or
> discriminate against a participant or beneficiary for exercising any right to which
> he is entitled under the provisions of an employee benefit plan . . . or for the purpose
> of interfering with the attainment of any right to which such participant may
> become entitled under the plan.

29 U.S.C. § 1140. "An 'essential' element of a § 510 claim is 'to show that an employer was at

least in part motivated by the specific intent to engage in activity prohibited by § 510.'" Wickes

v. Westfair Elec. Co., 2021 WL 217318, at *9 (S.D.N.Y. Jan. 20, 2021) (quoting Dister v. Cont'l

Grp., Inc., 859 F.2d 1108, 1111 (2d Cir. 1988)).

Here, absent additional factual support, plaintiff's conclusory allegation that defendants

"engaged in a scheme to intentionally interfere with the contractual and vesting rights and benefit

entitlements of the Plaintiff" is inadequate to plead defendants acted with the requisite

---

[6]     For the same reasons, plaintiff's claim for a declaratory judgment that the Trustees'
denial of plaintiff's benefits was arbitrary and capricious (asserted in Count Three) must also be
dismissed.

Plaintiff also labels his fourth cause of action a claim for "ERISA . . . Breach of
Contract," so to the extent Count Four asserts a claim pursuant to Section 502(a)(1)(B) it is
dismissed.

discriminatory or retaliatory intent.  (Compl. ¶ 48).  Moreover, because the only potentially

adverse action plaintiff identifies is the denial of his benefits, which, as discussed above, he fails

to plead were denied arbitrarily or capriciously, plaintiff does not adequately allege he suffered

adverse action.

Accordingly, plaintiff's claim pursuant to Section 510 of ERISA must be dismissed.

IV.      ERISA Section 204(g) Claim (Count Three)

Defendants argue plaintiff fails plausibly to allege a violation of Section 204(g) of

ERISA because plaintiff fails to identify a Plan amendment that reduced his accrued benefits.

The Court agrees.

Section 204(g) of ERISA, referred to as the "anti-cutback rule," provides "[t]he accrued

benefit of a participant under a plan may not be decreased by an amendment of the plan."  29

U.S.C. § 1054(g)(1).  "[T]he rule principally protects those benefits that a participant has earned,

rather than those that he might earn in the future."  Morrone v. Pension Fund of Local No. One,

I.A.T.S.E., 867 F.3d 326, 333 (2d Cir. 2017).  Because the rule "focuses on the effect of a plan

amendment . . . a court must consider whether, in any practical sense, the change of terms could

be viewed as shrinking the value of a participant's pension rights and reducing his promised

benefits."  Id. (emphasis in original).

Here, the Trustees' determination that plaintiff did not "retire" is not a Plan amendment.

"[E]ven broadly interpreted, the word 'amendment' contemplates that the actual terms of the

plan changed in some way, or that the plan improperly reserved discretion to deny benefits,

neither of which occurred here."  Metzgar v. U.A. Plumbers & Steamfitters Local No. 22

Pension Fund, 2022 WL 610340, at *3.  It is simply not the case, as plaintiff argues, that

defendants "accomplish[ed] the amendment via a Board of Trustees denial of Mr. Aracich's

pension and retirement health benefits." (Doc. #32 ("Pl. Mem.") at 14).  Instead, rather than

amending the Plan, the Trustees endeavored to apply the terms of the Plans' governing

documents to plaintiff's request.

Moreover, plaintiff does not plausibly allege the Trustees' interpretation decreased his

accrued benefits.  Plaintiff argues the Trustees "modif[ied] the 'Contributing Employer' plan

definition" to remove benefits to which he had vested rights.  (Pl. Mem. at 14).[7]  However, the

parties agree plaintiff ceased working in Covered Employment as of January 1, 2021, at a time

when he was sixty years old with thirty years of service credit.  Plaintiff therefore fails to allege

that the Trustees' interpretation had any effect on his accrued benefits.

Accordingly, plaintiff's claim under Section 204(g) of ERISA must be dismissed.

V.      ERISA Breach of Fiduciary Duty Claim (Count Five)

Defendants argue plaintiff does not sufficiently allege defendants breached their fiduciary

duties under ERISA.

The Court agrees.

A.      Legal Standard

Section 502(a)(3) of ERISA authorizes a participant of an employee benefit plan to bring

a civil action to redress fiduciary breaches.  Sullivan-Mestecky v. Verizon Commc'ns, Inc., 961

F.3d 91, 98–99 (2d Cir. 2020).  "[T]o state a claim under section 502(a)(3) for fiduciary

---

[7]      In support of his first cause of action, plaintiff alleges "[u]pon information and belief, the
Board of Trustees met in 2021 and amended the [Pension Plan] to allow participants with 30
years' service credit and over 60 years old to receive a Regular Pension benefit."  (Compl. ¶ 43).
However, even if true, this amendment would have occurred after plaintiff ceased accruing
benefits on January 1, 2021, and plaintiff does not allege it reduced his already-accrued benefits.
"Employers remain perfectly free to modify the deal they are offering their employees, as long as
the change goes to the terms of compensation for continued, future employment."  Morrone v.
Pension Fund of Local No. One, I.A.T.S.E., 867 F.3d at 338.

breach . . . a plaintiff must establish three elements:  (1) the defendant was performing a fiduciary function when it engaged in the conduct at issue in the complaint; (2) the defendant breached a fiduciary duty; and (3) the plaintiff is entitled to equitable relief."  In re DeRogatis, 904 F.3d 174, 190 (2d Cir. 2018).

"ERISA imposes a 'prudent man standard of care' on fiduciaries entrusted with the administration of  [ERISA] plans."  Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., 712 F.3d 705, 715 (2d Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)).  This standard "requires fiduciaries to act solely in the interest of the participants and beneficiaries"; to "act for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan"; to "use the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use"; and "to discharge their duties in accordance with the [plan] documents" and ERISA.  Id. (quoting 29 U.S.C. §§ 1104(a)(1)(A), (B), (D)).

These duties impose an obligation on plan fiduciaries "to provide participants with complete and accurate information about plan benefits," and "a fiduciary may be liable for fiduciary breach if a plan member is misled" by unclear plan documents and misrepresentations by the fiduciary.  In re DeRogatis, 904 F.3d at 193–94.

B.    Application

Although plaintiff has adequately alleged defendants were fiduciaries and were performing a fiduciary function when communicating with plaintiff about his plan benefits, plaintiff has not plausibly alleged defendants breached their duties.

14

First, as discussed above, plaintiff has not plausibly alleged defendants acted arbitrarily and capriciously in denying plaintiff's request for benefits.  Thus, plaintiff has not alleged such denial constituted a failure by the Trustees to act in accordance with the Plans.

Second, plaintiff has not plausibly alleged defendants made any misrepresentation regarding the Plans' terms, either directly to plaintiff or in the Plans' documentation.  To the contrary, based on the communications attached to the pleadings, defendants consistently communicated that plaintiff was not eligible for retirement benefits on February 26, 2021, because he never stopped working, which aligns with the language in the governing Plan documents.

Finally, regarding plaintiff's claims that defendants violated the reporting and disclosure requirements set forth in 29 U.S.C. §§ 1024(b) and 1030,[8] even if the Court assumes defendants act as fiduciaries in performing these functions, plaintiff does not allege any documents defendants failed to provide, or any reporting standard with which defendants failed to comply.

Accordingly, the breach of fiduciary duty claims must be dismissed.

VI.    Breach of Contract Claim (Count Four)

Defendants argue plaintiff's state-law breach of contract claim is duplicative of, and therefore preempted by, ERISA.

The Court agrees.

"[A]ny state-law cause of action that duplicates . . . the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is

---

[8]    Plaintiff also appears to assert a claim pursuant to 29 C.F.R. § 2520.104-23(b), but this rule applies only to "plans maintained by an employer for a select group of management or highly compensated employees," and does not apply to the Pension Plan or the Welfare Plan. Accordingly, this claim must also be dismissed.

therefore pre-empted." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004). "In other words,

if an individual . . . could have brought his claim under ERISA § 502(a)(1)(B), and where there

is no other independent legal duty that is implicated by a defendant's actions, then the

individual's cause of action is completely pre-empted by ERISA." Id. at 210. For that reason,

"breach of contract claims arising from a failure to pay benefits under an ERISA plan are

preempted." Chau v. Hartford Life Ins. Co., 167 F. Supp. 3d 564, 572 (S.D.N.Y. 2016).

Here, plaintiff claims defendants breached the Plans' governing documents by not paying

his benefits. Therefore, plaintiff's breach of contract claim is preempted by ERISA. See

Ruderman v. Liberty Mut. Grp., Inc., 2022 WL 244086, at *3 (2d Cir. Jan. 27, 2022) (summary

order) (district court correctly dismissed breach of contract claim as preempted by ERISA).

Accordingly, the breach of contract claim must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. # 25) and close this case.

Dated: September 19, 2022
       White Plains, NY

                              SO ORDERED:


                              _____
                              Vincent L. Briccetti
                              United States District Judge